# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

ERIN CARINE RYERSON,        )
                               )
     Plaintiff,            )
                               )
v.                           )     Case No. 2:19-cv-01609-SGC
                               )
ANDREW SAUL, Commissioner of   )
Social Security,             )
                               )
     Defendant.          )

## <u>MEMORANDUM OPINION</u>[1]

The plaintiff, Erin Ryerson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and disability insurance benefits ("DIB").  (Doc. 1).  Ryerson timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review.  For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I.    FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Ryerson was thirty-six at the time of her disability onset and forty-one at the time of the unfavorable decision issued by the Administrative Law Judge ("ALJ").  (Tr. at 24, 37).  She speaks English, has a high school education, a bachelor's degree

---

[1] The parties have consented to magistrate judge jurisdiction under 28 U.S.C. § 636(c).  (Doc. 9).

in business from the University of Alabama, and is eligible to sit for the CPA Exam. (Tr. at 41-42).  Ryerson's past experience includes working as an accountant, an auditor clerk, a controller, a city or county auditor, an accounts payable bookkeeper, and a professional consultant.  (Tr. at 23, 42-46).  At the time of her hearing before the ALJ, Ryerson was still working part-time doing bookkeeping and auditing for Industrial Training.  (Tr. at 47).  She filed the instant application on April 12, 2015, alleging a disability onset date of November 19, 2014, due to ulcerative colitis, depression, migraines, anxiety, high blood pressure, vitamin deficiencies, osteopenia, a herniated disc in lower back, and fibromyalgia.  (Tr. at 15, 47, 163). Ryerson testified she could no longer work due to her ulcerative colitis, depression, migraines, sleep apnea, and more recently fibromyalgia and arthritis.  (Tr. at 47).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA").  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in SGA, he or she is not disabled, and the evaluation stops.  *Id*.  If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet durational

2

requirements before a claimant will be found disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairments fall within this category, the claimant will be found disabled without further consideration.  *Id.*  If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops.  *Id.*  If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience, to determine whether she can perform other work.  *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, she is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found Ryerson met the date last insured ("DLI") requirement of the Social Security Act on December 31, 2019. (Tr. at 17).  The ALJ then determined Ryerson had not engaged in SGA from her alleged onset date of November 19, 2014 through her DLI.  (*Id.*).  Although she worked after the alleged disability onset date, Ryerson's work activity did not rise to the level of SGA.  (*Id.*).

Based on the requirements set forth in the regulations, the ALJ determined Ryerson's following impairments to be severe: ulcerative colitis, migraine headaches, major depressive disorder, generalized anxiety disorder, obesity, and radiculopathy.  (*Id.*).  However, the ALJ found Ryerson does not have an impairment or combination of impairments that meet or medically equal any of the listed impairments in 20 C.F.R. Part 404. Subpart P, Appendix 1 (§§ 404.1520(d), 404.1525, and 404.1526).  (Tr. at 19).  The ALJ found Ryerson's statements about the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence in the record.  (Tr. at 22).  The ALJ also found the severity of Ryerson's mental impairments, considered singly and in combination, did not meet or medically equal the criteria of listings in 12.04 and 12.06.  (Tr. at 20).  In making this finding, the ALJ considered whether the "paragraph B" criteria were satisfied.  To satisfy these criteria, the mental impairments must result in at least one extreme or two marked limitations in four broad areas of mental

functioning set out in the disability regulations for evaluating mental disorders.  (*Id*.).

These criteria consist of: (1) understanding, remembering, or applying information;

(2) interacting with others; (3) concentrating, persisting, or maintaining pace; and

(4) adapting or managing oneself.   20 C.F.R. § 404.1520a(c)(3).   The ALJ

determined Ryerson did not present evidence reflecting any of these limitations.

(*Id*.).  Her mental impairments did not cause at least two "marked" limitations or one

"extreme" limitation; therefore, the "paragraph B" criteria were not satisfied.  (Tr.

at 21).  The ALJ determined Ryerson has the following RFC:

> To perform light work as defined in 20 C.F.R. 404.1567(b) except
> occasional climbing, frequent balancing, occasional stooping, kneeling
> and crouching, never crawling, no concentrated exposure to extremes
> of temperature or continuous vibrations, no work around unprotected
> heights, avoiding hazardous machinery. The work area should be
> located near easily accessible toileting facilities. There should be no
> production quotas and the claimant should deal mainly with objects and
> not people with occasional contact with the general public and
> coworkers. The claimant should be required to perform only simple,
> routine job tasks.

(Tr. at 21).

The ALJ found Ryerson "unable to perform any past relevant work" through

her DLI and considered her a "younger individual," being thirty-six years old on the

alleged onset date.  (Tr. at 23-24).  The ALJ also determined the "[t]ransferability of

job skills [was] not material to the determination of disability because using the

Medical-Vocational Rules as a framework supports a finding that the claimant is

'not disabled,' whether or not [she] has transferable job skills."  (Tr. at 24).  At the

hearing, a vocational expert ("VE") testified that considering Ryerson's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy she can perform (20 C.F.R. §§ 404.1569, 404.1569(a)). (*Id.*). The ALJ concluded his findings by stating Ryerson had not been under a disability, as defined in the Social Security Act, from November 19, 2014, the alleged onset date, through her DLI, December 31, 2019. (Tr. at 25). The Appeals Council denied Ryerson's request for review, and she timely filed this appeal. (Tr. At 1-6; Doc. 13).

## II.   STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210

(11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   DISCUSSION

On appeal, Ryerson contends the ALJ's decision should be reversed and remanded for three reasons: (1) the ALJ erred in discounting her subjective complaints of disabling pain; (2) the ALJ failed to provide a reasoned evaluation of

all the evidence when rendering the RFC assessment; and (3) the ALJ erred in giving little weight to the opinions of Drs. Cheryl Goyne, William Halama, Ginger Alred, and Diana Paulk.

### A.     Ryerson's Credibility and the Pain Standard

Ryerson contends the ALJ erred in discounting her subjective complaints of disabling pain as a result of her migraine headaches and ulcerative colitis.  Ryerson's complaints alone are insufficient to establish a disability.  *See* 20 C.F.R. §§ 404.1529(a), 416.926(a); *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991). Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence.  *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). The Eleventh Circuit applies a two-part pain standard when a plaintiff claims disability due to pain or other subjective symptoms. The plaintiff must show evidence of the underlying medical condition and either (1) objective medical evidence that confirms the severity of the alleged symptoms arising from the condition or (2) that the objectively determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged symptoms.  *See* 20 C.F.R. §§ 404.1529(a), (b), 416.929(a), (b); Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029; *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002).

If the objective medical evidence does not confirm the severity of the plaintiff's alleged symptoms but the plaintiff establishes she has an impairment that could reasonably be expected to produce her symptoms, the ALJ must evaluate the intensity and persistence of the alleged symptoms and their effect on her ability to work. *See* 20 C.F.R. §§ 404.1529(c), (d), 416.929(c), (d); SSR 16-3p; *Wilson*, 284 F.3d at 1225–26. To discredit the plaintiff's statements, the ALJ must clearly "articulate explicit and adequate reasons." *See Dyer*, 395 F.3d at 1210.

A credibility determination is a question of fact subject only to limited review in the courts to ensure the finding is supported by substantial evidence. *See Hand v. Heckler*, 761 F.2d 1545, 1548–49 (11th Cir. 1985), *vacated for rehearing en banc*, 774 F.2d 428 (11th Cir. 1985), *reinstated sub nom.*, *Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Courts in the Eleventh Circuit will not disturb a clearly articulated finding supported by substantial evidence. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). However, a reversal is warranted if the decision contains no indication of the proper application of the pain standard. "The question is not . . . whether [the] ALJ could have reasonably credited [Ryerson's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

Ryerson stated she has not had a full-time job since November 2014 and that migraines and ulcerative colitis were her main impediment to maintaining

employment.  (Tr. at 47, 57).  The ALJ noted Ryerson's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, satisfying part of the pain standard.  (Tr. at 22).  However, the ALJ found Ryerson's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (*Id.*).  The ALJ reviewed a variety of evidence to support his conclusion, including objective medical evidence, treatment history, and daily activities (including her current part-time position as an auditor).  (Tr. at 18, 22-3).  Substantial evidence supports the ALJ's conclusion in this case.

The ALJ began by noting that the objective medical evidence does not support the disabling symptoms and limitations alleged by Ryerson.  (Tr. at 22-3).  At various doctor visits in 2014 and 2015, she reported no gastrointestinal complaints.  (Tr. at 336, 344, 349, 369).  She had a colonoscopy in 2015, after which her gastroenterologist, Dr. Halama, characterized her symptoms as "mild" and noted "no significant abnormalities were seen."  (Tr. at 301).  Ryerson's pain specialist, Dr. Goyne, noted on March 24, 2015, that Norco and Pamelor helped her abdominal pain and diarrhea, respectively.  (Tr. at 392).  The pain in Ryerson's lower left abdominal quadrant during the summer of 2015 was due to a ruptured ovarian cyst, which required no specific treatment, resoling on its own.  (Tr. at 405-06, 419).

Ryerson reported to Dr. Halama on August 10, 2015, that she was "doing better." (Tr. at 419).

On January 12, 2016, Dr. Halama noted Ryerson's right-sided abdominal pain resolved after taking Enterogam. (Tr. at 744, 749). In March 2016, Ryerson told Dr. Goyne she had not had any recent colitis flares and had 14 bowel movements per week with no constipation. (Tr. at 693-94). On June 9, 2016, Dr. Halama described Ryerson's ulcerative colitis as "under good control." (Tr. at 729). These statements undermine Ryerson's subjective allegations of disabling symptoms.

Ryerson's most recent colonoscopy was in 2017; Dr. Halama characterized her symptoms as "mild" and noted "no significant abnormalities." (Tr. at 698, 700, 702). Ryerson also reported to Dr. Goyne in 2017 that she only had mild and episodic constipation and Norco helped by slowing her diarrhea. (Tr. at 568). Dr. Goyne opined that "[p]ain is subjective. However, she is a truthful and compliant patient." (Tr. at 883). Dr. Minh Vu-Dinh, a physician designated by the Commissioner to review all medical evidence of record, explained that Ryerson's subjective pain had been found by Dr. Halama (the main provider for the ulcerative colitis) to have a significant functional component, i.e., more than expected from findings and pathology. (Tr. at 913-15). On all three colonoscopies (October 2015, May 2016, and August 2017), the biopsies collected showed either mild inflammation or no active colitis. (Tr. at 301, 415, 700, 727).

Ryerson alleges her migraines are frequent and disabling. However, after reviewing all the evidence, the ALJ explained that her migraines were not intractable or status migrainosus—meaning they were managed with medication. (Tr. at 18). Dr. Goyne noted on March 24, 2015, that Ryerson's migraines were responding to treatment. (Tr. at 392). On numerous occasions in 2015, she reported having no headaches. (Tr. at 336, 344, 349). On November 30, 2015, Dr. Goyne recommended Ryerson see an ear, nose, and throat ("ENT") doctor for chronic sinusitis as a possible contributing factor to her migraines. (Tr. at 411). On February 4, 2016, Ryerson underwent sinus surgery, which eliminated her biocciptal headaches. (Tr. at 690, 832). Four months later in June 2016, Ryerson told Dr. Goyne her headaches had returned but typically only during her menstrual cycle. (Tr. at 680). Dr. Goyne changed Ryerson's medications in June 2016 to assist with migraines occurring during her menstrual cycle, as these now-monthly headaches were more frequent than in the past. (Tr. at 684). This suggests that, at their worst in 2016, her headaches occurred only once a month. On October 15, 2016, Ryerson reported to Dr. Goyne the new medication regimen was helping her pain, including a decrease in migraines. (Tr. at 656). Dr. Goyne also noted that a two-day headache was unusual for Ryerson—they typically lasted only a few hours and were less frequent once she stopped working. (Tr. at 388). At many doctor visits in 2017, Ryerson reported her migraines were improving. (Tr. at 584, 606, 623, 633).

The ALJ also considered the opinion of reviewing physician Dr. Vu-Dinh when determining Ryerson's credibility regarding her subjective pain and limitations due to her ulcerative colitis and migraines.  State agency consultants are experts in disability evaluation whose opinions may be entitled to great weight if supported by evidence in the record.  *See* 20 C.F.R. § 404.1527(e)(2); SSR 96-p; *see also Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 902-03 (11th Cir. 2012). Dr. Vu-Dinh responded to interrogatories sent after Plaintiff's disability determination hearing.  (Tr. at 22, 913-15).  Dr. Vu-Dinh had the opportunity to review all the medical evidence of record and specifically mentioned reviewing Ryerson's ulcerative colitis biopsies. (Tr. 913) (citing Exhibits 2F, 5F, and 12F).  Dr. Vu-Dinh also noted Ryerson did not have any severe complications related to ulcerative colitis, such as severe bleeding, a need for surgical intervention, or nutritional deficits.  (Tr. at 914). The ALJ gave great weight to Dr. Vu-Dinh's opinion.[2]

Ryerson's argument that the ALJ failed to provide reasons for rejecting her testimony lacks merit.  To the contrary, the ALJ cited to evidence that supports

_____

[2] Ryerson contends the ALJ overlooked the August 25, 2017 colonoscopy in characterizing her ulcerative colitis as mild.  (Doc. 13 at Page 5).  However, the ALJ gave great weight to Dr. Vu-Dinh's opinion, which did consider the August 25, 2017 colonoscopy (Exhibit 12F), along with the others.  (Tr. at 913).  *See Dyer,* 395 F.3d at 1211 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision").  Further, one colonoscopy showing histologic changes in the rectum consistent with moderate ulcerative colitis does not undermine the ALJ's characterization of Ryerson's ulcerative colitis as mild, especially given two other colonoscopies showed mild inflammation or no active colitis.  (Tr. at 22, 301, 415, 727, 732, 734).

finding Ryerson had limitations and impairments, albeit none that met or medically equaled the severity of a listed impairment.  Ryerson asserts the ALJ ignored Dr. Halama's report diagnosing her with visceral hypersensitivity in June 2016.  (Doc. 13 at 5).  Although he did not use the term, the ALJ still noted, as did Dr. Vu-Dinh, that Ryerson's pain had a functional component – i.e. "more than expected from physical findings and pathology."  (Tr. at 22, 913, 915).  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision," so long as the ALJ's decision indicates he considered the record as a whole.  *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (rejecting the claimant's argument the ALJ ignored evidence favorable to him in evaluating his statements) (quoting *Dyer*, 395 F.3d at 1211).

Ryerson makes a cursory assertion that if her pain and sensitivity had psychological origins, the ALJ could not ignore it as a mental disorder.  (Doc. 13 at Page 6).  However, she does not support this conclusory allegation or point to any specific errors in the ALJ's assessment of her mental limitations.  As such, she has waived the argument.  *See, e.g., Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (holding claimant waived issue because he did not elaborate on claim or provide citation to authority supporting it).

Here, the ALJ did not disregard Ryerson's pain, but instead determined it did not prevent her from working based on all the evidence of record.  (Tr. at 21).  The

ALJ's decision is supported by citations to specific evidence and articulates explicit reasons for discounting Ryerson's testimony.  *See Dyer*, 395 F.3d at 1212; *Wilson*, 284 F.3d at 1226.

### B.  Ryerson's RFC

An RFC is the ALJ's assessment of the most a claimant can do despite her impairments based on all of the relevant medical and other evidence. *See* 20 C.F.R. §§ 404.1545(a)(1), (3), 416.945(a)(1), (3).  A claimant bears the burden of proving she was disabled within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c(a)(3)(H)(i); 20 C.F.R. § 416.912(a), (c); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To determine if Ryerson could perform her past relevant work or other work at steps four and five of the sequential evaluation process, the ALJ had to assess her RFC.  In order to determine an individual's RFC, the ALJ assesses all of the relevant evidence in the record, including medical reports prepared by a physician or other healthcare provider, as well as more subjective descriptions and observations of an individual's limitations.  *Id*. § 404.1545(a)(3). Moreover, the evaluator considers not only the impairments classified as "severe" but the "limiting effects" of all conditions when making a judgment about an individual's RFC. *Id*. § 404.1545(e).  A reviewing court will affirm the ALJ's RFC assessment if it is supported by the objective medical evidence.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Ryerson contends the ALJ's RFC assessment is incomplete and unexplained and, therefore, is not supported by substantial evidence. (Doc. 13 at 7). Her main issue appears to be that the ALJ found she has severe mental and physical impairments but is still able to work. Ryerson argues the ALJ did not consider the diagnosis and impact of her migraines on her ability to sustain work activity. However, a diagnosis does not establish limitations. *See Moore*, 405 F.3d at 1213; *see also Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005) ("Disability is determined by the effect an impairment has on the claimant's ability to work, rather than the diagnosis of the impairment itself.").

The ALJ considered all the medical records, as well as Dr. Vu-Dinh's opinion, in formulating Ryerson's RFC. (Tr. at 22-23). Dr. Vu-Dinh concluded he "did not see any support for" a restriction against full-time work. (Tr. 22-23, 915). The ALJ considered Dr. Halama's characterization of Ryerson's colitis as mild. (Tr. at 22, 301). The ALJ also noted that even though Ryerson's migraines had reportedly worsened in 2012, she had substantial earnings for the following two years. (Tr. at 23). Further, Ryerson was working part-time as an auditor—work the VE characterized as very skilled— at the time of the hearing. (Tr. at 20, 47-48).

Ryerson argues the ALJ failed to consider absences caused by her ulcerative colitis and migraines, pointing to reports from Drs. Goyne, Halama, Alred, and Paulk; each opined she would be unable to sustain full-time work activity due to her

conditions.  (Tr. at 882, 884, 886, 888).  However, the assessment of a claimant's RFC is based on all relevant evidence and not simply on a doctor's opinion.  *See* 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); SSR 96-5p, 1996 WL 374183 at *5.  Although physicians' opinions about a claimant's abilities are relevant evidence, they are not determinative because the ALJ has the responsibility of assessing the claimant's RFC.  *See id.* §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive.") (citing 20 C.F.R. § 404.1527(d)(2)).  Even though Drs. Vu-Dinh and Robert M. Heilpern—a state agency medical consultant—concluded Ryerson could meet the exertional requirements of medium work, the ALJ limited Ryerson to the performance of light work, taking into account all of her impairments.  (Tr. at 23).

The ALJ's determination of Ryerson's RFC is supported by substantial evidence.

## C.   <u>Weight to Medical Opinions</u>

The ALJ must articulate the weight given to different medical opinions in the record and his supporting reasons.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  The weight afforded to a medical opinion regarding

the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

Within the classification of acceptable medical sources are the following different types of sources whose opinions are entitled to different weight: 1) a treating source, or a primary physician, which is defined in the regulations as "your physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you;" 2) a non-treating source, or a consulting physician, which is defined as "a physician, psychologist, or other acceptable medical source who has examined you but does not have, or did not have, an ongoing treatment relationship with you;" and 3) a non-examining source, which is "a physician, psychologist, or other acceptable medical source who has not examined you but provides a medical or other opinion in your case . . . includ[ing] State agency medical and psychological consultants . . . ."  20 C.F.R. § 404.1502.

The regulations and case law set forth a general preference for treating medical sources' opinions over those of non-treating medical sources and non-treating medical sources over non-examining medical sources.  *See* 20 C.F.R. §

404.1527(d)(2); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985). Thus, a treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (quoting *Lewis*, 125 F.3d at 1440) (internal quotations omitted). "Good cause" exists for an ALJ to give less weight to a treating physician's opinion when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards*, 937 F.2d at 583-84 (holding "good cause" existed where the opinion was contradicted by other notations in the physician's own record).  In short, an ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *McCloud v. Barnhart*, 166 F. App'x 410, 418–19 (11th Cir. 2006) (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)).

Further, opinions such as whether a claimant is disabled, the claimant's RFC, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(d), 416.927(d).  *See also Bell v. Bowen*, 796 F.2d 1350, 1353-54 (11th Cir. 1986) (recognizing that

although a claimant's physician may state he is "disabled" or "unable to work," "the agency will nevertheless determine disability based upon the medical findings and other evidence."). Statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's RFC. *See, e.g.,* 20 C.F.R. § 404.1546(c).

Ryerson contends the ALJ failed to provide sufficient reasons for giving little weight to the opinions of Drs. Goyne, Halama, Alred, and Paulk regarding her frequent absences and inability to work forty hours a week. She argues the ALJ erroneously gave greater weight to non-examining sources. However, the ALJ explained he afforded "less weight" to these opinions because they were "largely unsupported." (Tr. at 22-23). Contrary to her doctors' opinions, the medical evidence shows Ryerson's ulcerative colitis pain was effectively controlled with medication; two of three biopsies showed no or only mild ulcerative colitis; and Ryerson reported fourteen bowel movements per week, which equates to two bowel movements per day. (Tr. at 301, 415, 684, 694, 700). In addition, Ryerson's pain was effectively controlled by medication, without unwanted side effects. (Tr. at 388, 392, 397, 419, 568, 584, 606, 623, 633-34, 656, 664-65, 683, 690, 693).

The ALJ properly afforded greater weight to Dr. Vu-Dinh because his opinion was based on a review of the entire medical record, he provided explanations for his reasoning, and he was familiar with Social Security's standards regarding disability.

*See* 20 C.F.R. §§ 404.1527(c)(4), (c)(6) (consistency with the record as a whole and a medical source's "amount of understanding of [the] disability programs and their evidentiary requirements" and "extent to which a medical source is familiar with the other information in [the] case record" are "relevant factors that [are considered] in deciding the weight to give a medical opinion").

As shown above, the ALJ articulated reasons for giving little weight to the opinions of Ryerson's treating physicians, and substantial evidence supports those reasons.

## IV.   CONCLUSION

Upon review of the administrative record and considering all of Ryerson's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law.   Accordingly, the Commissioner's decision is due to be affirmed.   A separate order will be entered.

**DONE** this 30th day of March, 2021.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE